UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,               Cr. No. 16-20291

v.

                                    Hon. Nancy G. Edmunds

ISAAC JAMES HARGROVE,

        Defendant.

                                     /

**RESPONSE TO GOVERNMENT'S
NOTICE OF SUPPLEMENTAL AUTHORITY [R. 49]**

The government filed a notice of *United States v. Jones*, ___ F.3d ___, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020), and also argues that Mr. Hargrove's very serious health conditions and the COVID-19 global pandemic are not extraordinary or compelling reasons to reduce his sentence. The government's discussion of *Jones* offers this Court nothing new or helpful, and it underplays the severity of Mr. Hargrove's medical conditions in a manner that conflicts with the medical records. In fact, additional medical records further substantiate just how at risk he is. (Ex. K, Medical Records, filed *Under Seal*)

    **A. *Jones* is controlling precedent that helps Mr. Hargrove**

*Jones* helps Mr. Hargrove, not the government. In *Jones*, the Sixth Circuit held that district courts have "full discretion to define 'extraordinary and compelling' without

consulting the policy statement § 1B1.13." 2020 WL 6817488, at *9. What that means is this Court is no longer bound by the BOP's limited criteria for a sentence reduction, which Mr. Hargrove satisfies in any event.

In addition, the government claims the Sixth Circuit was wrong (R. 49, Notice of Supp. Authority, PgID 1340), but it finds very little support for that proposition. Every circuit court to consider the question reached the same conclusion: the policy statements are no longer applicable and district courts have discretion to define the term "extraordinary and compelling reasons." *United States v. McCoy*, No. 20-6821, 2020 WL 7050097, at *7 (4th Cir. Dec. 2, 2020); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).

The government also insists this Court should ignore the Sixth Circuit's clear directive and classifies its holdings as "dicta." That is also incorrect. Judge Lawson recently criticized this same argument, explaining that calling this language "dictum misrepresents that holding in that case," and that "[e]thical lapses by the Executive Branch like this do not advance the cause of justice, irrespective of the underlying merits of the motion." *United States v. White*, No. 18-20183, Dkt. 254, PgID 1662 (E.D. Mich. Dec. 9, 2020). In *Jones*, one question presented was whether the district court procedurally erred by *not* referring to § 1B1.13. Holding that district courts are not bound by the policy statements was therefore necessary to the court's judgment. *See Wright v. Spaulding*, 939 F.3d 695, 700–01 (6th Cir. 2019).

2

In the end, this Court does not need to chart new territory to find that Mr. Hargrove has presented extraordinary and compelling reasons to reduce his sentence because he argued that his health conditions, the conditions of his incarceration, and the COVID-19 pandemic fit § 1B1.13's definition. (R. 40, Supp. Br., PgID 887) In fact, this Court has already found that a person with similar health conditions, which placed him in the COVID-19 highest-risk category, had shown "extraordinary and compelling reasons" warranting a sentence reduction even under § 1B1.13. *United States v. Moore*, No. 06-20465, 2020 WL 6440920, at *2 (E.D. Mich. Nov. 3, 2020). Mr. Hargrove's myriad health conditions, including Type II diabetes, hypertension, severe obesity, chronic ischemic heart disease, aortic valve disorder, hyperlipidemia, atrial fibrillation, ruptured aortic aneurysm, and paralytic syndrome qualify as "extraordinary and compelling," too.

Yet, in contrast to the position it has taken in previous briefing in this case (R. 38, Gov't Opp'n to Mot. for Comp. Release, PgID 849–50) and nearly every compassionate-release motion where the movant had the same (or fewer) conditions, the government claims that he does not satisfy the statutory requirement that he show "extraordinary and compelling reasons." (R. 49, Gov't Notice of Supp. Authority, PgID 1341–42) It is hard to understand how *Jones* or Mr. Hargrove's worsening health support this change in the government's position. And the government has never offered an explanation.

3

### B. Mr. Hargrove has significant health conditions that put him at greater risk of severe COVID-19 illness

The government downplays the severity of Mr. Hargrove's documented conditions by apparently ignoring the most recent medical records submitted to this Court. It claims that Mr. Hargrove's Type II diabetes has not been verified. But Exhibit H to the Third Supplemental Brief (which was disclosed to government counsel) (Ex. L, E-mail Transmitting Sealed Ex.) show that doctors diagnosed Mr. Hargrove with Type II diabetes in September 2020, when he was in the hospital after his heart surgery. (*See, e.g.*, Ex. H, Medical Records, at 59–60, 165, 306, 310)[1]

The government also claims that Mr. Hargrove's aortic aneurysm and hypertension are under control and "elective surgery ha[s] been discussed." (R. 49, Notice of Supp. Authority, PgID 1314) But this also ignores that Mr. Hargrove has been hospitalized twice recently due to his aortic aneurysm and underwent surgery during which doctors found an aortic dissection and discovered he has atrial fibrillation. (*See, e.g.*, Ex. H, Medical Records, at 337, 344, 356, 365) And the government ignores

---

[1] Doctors had difficulty diagnosing Mr. Hargrove's diabetes because he has Sickle Cell trait. The CDC has also found that COVID-19 patients with Sickle Cell Disease have high rates of hospitalization and death. Ctr. for Disease Control, *Study finds people with sickle cell disease who developed coronavirus disease have high rates of hospitalization, intensive care unit admission, and death*, https://www.cdc.gov/ncbddd/sicklecell/features/scd-and-covid-19.html#:~:text=LinkedIn-,Study%20finds%20people%20with%20sickle%20cell%20disease%20who%20developed%20coronavirus,care%20unit%20admission%2C%20and%20death&text=Sickle%20cell%20disease%20(SCD)%20is,people%20in%20the%20United%20States (last visited Dec. 7, 2020).

that Mr. Hargrove was rushed to the hospital again in October 2020 after he reported chest pain to the medical department. (*Id.*, at 1–2)

Additional records counsel recently obtained confirm that Mr. Hargrove's hypertension and heart conditions are hardly under control. On November 25, 2020, a nurse saw Mr. Hargrove because of his elevated blood pressure. (Ex. K, Medical Records, at 1) The week before, a nurse evaluated him because of a concerning high blood pressure reading. (*Id.*, at 3) In the past two months, his blood pressure has been all over the place despite the fact that he is taking medication as prescribed:

- November 25, 2020: 140/92
- November 17, 2020: 150/94
- November 6, 2020 (2:28 pm): 138/70
- November 6, 2020 (3:30 pm): 152/88
- October 26, 2020: 177/110
- October 24, 2020: 136/84
- October 19, 2020: 210/120
- October 15, 2020: 154/96
- October 13, 2020: 138/90

(*Id.*, at 1, 3, 8–9) It is possible that Mr. Hargrove's blood pressure is elevated because of the stress created by lockdown conditions and the fear of getting sick with COVID-19. (*Id.*, at 8) But it is also a sign of how unhealthy he is and that the BOP is not managing his illnesses well.

The most recent set of records further underscore the severity of Mr. Hargrove's cardiac condition. The government continues to claim that Mr. Hargrove's aortic aneurysm is under control and "elective surgery ha[s] been discussed." (R. 49, Notice

of Supp. Authority, PgID 1314) But this also ignores that Mr. Hargrove has been hospitalized twice recently due to his aortic aneurysm and underwent surgery during which doctors found an aortic dissection and discovered he has atrial fibrillation. (*See, e.g.*, Ex. H, Medical Records, at 337, 344, 356, 365)

Mr. Hargrove was rushed to the hospital again in October 24, 2020 after he reported chest pain to the medical department. (*Id.*, at 1–2) At the hospital, an x-ray revealed that he had pleural effusion (water in the lungs) and compressive atelectasis. (Ex. K, Medical Records, at 72–73) Doctors inserted a chest tube to improve his breathing and recommended additional cardiac surgery in the next 2–4 weeks. (*Id.*, at 73) That has not happened because the Bureau of Prisons is again on lockdown.

While at the hospital, doctors discovered that Mr. Hargrove had acute kidney injury (AKI). (*Id.* at 73, 106) AKI, "also known as acute renal failure (ARF), is a sudden episode of kidney failure or kidney damage," which "causes a build-up of waste products in [the] blood and makes it hard for [the] kidneys to keep the right balance of fluid in [the] body."[2] Having AKI increases the chances that a person will develop kidney disease, stroke, heart attack, or having AKI again.[3]

Doctors have observed a disturbing relationship between COVID-19 and AKI. More than 20% of hospitalized COVID-19 patients and 50% of patients in the ICU

---

[2] Nat'l Kidney Foundation, *Acute Kidney Injury (AKI)*, https://www.kidney.org/atoz/content/AcuteKidneyInjury#:~:text=Acute%20kidney%20injury%20(AKI)%2C,of%20fluid%20in%20your%20body (last visited Dec. 3, 2020).
[3] *Id.*

develop AKI, and so it "is now recognized as a common complication of COVID-19."[4] Older age, being Black, diabetes, and hypertension "were significant predictors of AKI during hospitalization" for COVID-19.[5] In short, there is a very strong likelihood that Mr. Hargrove could develop AKI again and suffer long-term effects if he gets sick with COVID-19.

It is also worth noting that Mr. Hargrove also has a history of acute embolism and thrombosis of the vein. (Ex. K, Medical Records, at 49) Although the CDC does not recognize embolism and thrombosis as a risk factors for severe COVID-19 illness, research increasingly shows that COVID-19 impacts the blood-clotting system.[6] The novel coronavirus often causes blood clots, which can lead to more serious issues, such as strokes, kidney failure, heart inflammation, and an immunocompromised state.[7] "Data suggest that about one-in-three individuals critically ill with COVID-19 will

---

[4] Nadim, Mitra K., Forni, Lui G., & Kellum, John A., *COVID-19-associated acute kidney injury: consensus report of the 25th Acute Disease Quality Initiative (ADQI) Workgroup*, 16 Nature Rev. Nephrology 747–64 (2020), https://www.nature.com/articles/s41581-020-00356-5; *see also* Batlle, Daniel, et al., *Acute Kidney Injury in COVID-19: Emerging Evidence of a Distinct Pathophysiology*, 31 J. of Am. Soc'y of Nephrology 1380–83 (July 2020), https://jasn.asnjournals.org/content/31/7/1380.

[5] Webb, Melissa, *Acute kidney injury with COVID-19 shows potential for 'lifetime' impact*, Nephrology News & Issues (Nov. 18, 2020), https://www.healio.com/news/nephrology/20201118/acute-kidney-injury-with-covid19-shows-potential-for-lifetime-impact.

[6] *Systemic review finds high risk of deep vein thrombosis and pulmonary embolism in COVDI-19 patients*, Venous News (Oct. 15, 2020), https://venousnews.com/systematic-review-finds-high-risk-of-deep-vein-thrombosis-and-pulmonary-embolism-in-covid-19-patients/.

[7] Taylor Ardrey, *COVID-19 Autopsy Study Finds Blood Clots in 'Almost Every Organ', Pathologist Says*, Business Insider (July 13, 2020), https://www.sciencealert.com/covid-19-patient-autopsies-show-blood-clots-in-almost-every-organ-pathologist-says.

develop a potentially life-threatening blood clot," and there "are reports that patients with milder illness, or even those who are asymptomatic or unaware that they are infected with the coronavirus, are developing dangerous blood clots."[8] Most troubling, there is evidence that medication does not reliably mitigate the risk of blood clotting in COVID-19 patients.[9] And it seems people who show no other COVID-19 symptoms have also developed blood clots.[10] Mr. Hargrove's history of blood clots are an additional reason to find that he is at risk of becoming gravely ill if infected with the novel coronavirus.

### C. A time-served sentence is consistent with the objectives of punishment

Next, the government claims that the 18 U.S.C. § 3553(a) factors do not justify a sentence reduction. Specifically, it claims that Mr. Hargrove has not served enough of this Court's original 12-year sentence to warrant release. (R. 49, Gov't Notice of Supp. Authority, PgID 1343) In doing so, the government mischaracterizes *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020), and the amount of time Mr. Hargrove has left to serve. In *Ruffin*, the Sixth Circuit did not say that the length of the "remaining sentence also weighs heavily against release." (R. 49, Gov't Notice of Supp. Authority,

---

[8] Nat'l Blood Clot Alliance Press Release, *CDC Grant Supports National Blood Clot Alliance COVID- 19 Research* (July 28, 2020), available at https://www.stoptheclot.org/news/grant-supports-covid-19-research/.
[9] Cassandra Willyard, *Coronavirus Blood Clot Mystery Intensifies*, Nature (May 8, 2020), available at https://www.nature.com/articles/d41586-020-01403-8.
[10] Davoodi, Lotfollah et al., *COVID-19 Presented With Deep Vein Thrombosis: An Unusual Presenting*, 8 J. of Investigative Med. High Impact Case Reports, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7273555/.

8

PgID 1343) It merely acknowledged that district courts are permitted "to consider the amount of time that a defendant has served on a sentence when deciding whether to grant a sentence reduction." *Ruffin*, 978 F.3d at 1008 (quotations omitted). But that does not mean this factor weighs more heavily than others.

In addition, Mr. Hargrove is less than six years away from his statutory release date, August 13, 2026. That means he has approximately 68 months to release, or less than 50% of his 140-month sentence left to serve. In *Moore*, this Court reduced the sentence of a ranking member of the Highwaymen Motor Club who had served approximately 50% of his sentence. *See Moore*, 2020 WL 6440920, at *1 ("Defendant has served roughly fifty percent of his sentence."). Thus, the fact that Mr. Hargrove is at the halfway mark does not necessarily counsel against a sentence reduction. Unlike Mr. Hargrove, however, Moore had participated in "significant, extensive, and violent criminal activity" for which this Court initially imposed a life sentence. *Id.* at *1.

The government also reiterates points already made, suggesting that Mr. Hargrove is a danger to the community because he has been unable to complete his GED or other "vocational training" and is poor. (*See* R. 49, Gov't Notice of Supp. Authority, PgID 1343) But this argument rests on two assumptions about Mr. Hargrove's time in the BOP. The first is that he *can* obtain these credentials. He has learning difficulties and does not yet read, write, or do math at a level where he can pass the GED. (R. 40, Supp. Br., PgID 896–97) Since the lockdown began, Mr. Hargrove has been completing GED-preparation packets, but that is the extent of the training

available now. In addition, Mr. Hargrove has significant cardiac issues and is confined to a wheelchair, which limits his ability to participate in many programs.

Although the severity of Mr. Hargrove's conduct remains unchanged, where and how he is serving his sentence has. This Court "did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic.'" *Moore*, 2020 WL 6440920, at *2 (quoting *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020)).

## CONCLUSION

Isaac Hargrove's motion for compassionate release should be granted.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/ Colleen P. Fitzharris
Attorney for Isaac Hargrove
613 Abbott Street, Ste. 500
Detroit, Michigan 48226
313-967-5868
E-mail: colleen_fitzharris@fd.org

Date:  December 11, 2020

## CERTIFICATE OF SERVICE

Counsel certifies that on the above date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to opposing counsel.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/ Colleen P. Fitzharris
Attorney for Isaac Hargrove
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
313-967-5868
E-mail: colleen_fitzharris@fd.org

Date:  December 11, 2020