UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,                      Case No. 16-20291

v.                                               Honorable Nancy G. Edmunds

ISAAC JAMES HARGROVE,

    Defendant-Petitioner.

_____/

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE [32][39]**

Before the Court is Petitioner Isaac Hargrove's motion to reduce his sentence to time served, filed under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Petitioner filed two identical motions (ECF 32, 39), four supplemental briefs (ECF No. 40, 42, 44, 53), a reply brief (ECF No. 47) and a response to the Government's notice of authority (ECF No. 51). His motion and supplements thoroughly explain his request for compassionate release based upon his multiple serious health conditions coupled with the ongoing threat of COVID-19 in the congregate confinement of a prison setting. The Government filed a response in opposition to the motion (ECF No. 38) and a response to Petitioner's third supplemental brief (ECF No. 46.). For the reasons set forth below, the Court grants Petitioner's motion.

**I.    Background**

Petitioner is 46 years old and has already lived a hard and troubled life. After his father died of a heroin overdose, Petitioner spent his childhood moving in and out of foster homes, children's wards, and his grandmother's home where he was verbally and

1

physically abused. His mother, a drug addict and paranoid schizophrenic, stabbed him in the hand when he was ten years old and taught him how to smoke crack cocaine when he was eleven. He had difficulties in school and was placed in special education. In 1989, he began selling drugs. (ECF No. 24.)

He has since racked up a lengthy criminal history. In 1990, at age 17, he received his first conviction for drug possession and two months later was convicted of breaking and entering an occupied dwelling with intent. At age 19, he was convicted of possession with intent to deliver narcotics and seven years later he was convicted of delivery or manufacture of cocaine. In 2007, at age 33, he was again convicted of delivery or manufacture of a controlled substance. Three more convictions for delivery or manufacture of a controlled substance followed in 2008, 2009, and 2013. (ECF No. 38.) As a result of these convictions, Petitioner has been in and out of custody and on and off probation and parole for most of his adult life.

On April 12, 2006 Petitioner, still on parole from his previous conviction, violated his parole and was arrested following nine controlled sales of crack cocaine to a confidential informant at a Detroit Coney Island restaurant. (*Id.*) The purchases amounted to 53 grams of crack cocaine. On the same date, a search warrant was executed at his house. Officers discovered two firearms, five large sandwich bags of crack cocaine and heroin totaling 199 grams, and miscellaneous narcotic packaging equipment. (*Id.*) He was charged with possession with intent to distribute heroin and cocaine base, possession of a stolen firearm, felon in possession of a firearm and possession of a firearm in furtherance of drug trafficking. (ECF No. 10.) He pleaded guilty to two counts of possession with intent to distribute illegal drugs. His sentence was subject to a 60-month

mandatory minimum and was enhanced due to his status as a career offender. (ECF No. 28.) On April 18, 2017, this Court sentenced him to 72 months imprisonment on each count, to run consecutively for a total sentence of 144 months and to be followed by a four-year period of supervised release. (ECF No. 27.) He filed but voluntarily withdrew an appeal. (ECF No. 30.)

Petitioner has now served over four and a half years of his sentence and his projected release date is August 13, 2026. (ECF No. 40-2). He is currently incarcerated at FCI Hazelton which houses 1198 inmates. (ECF No. 38.) The Bureau of Prisons presently reports six positive cases of COVID-19 among inmates and staff at that facility and 224 recoveries. One inmate death has also been attributed to the virus. *See COVID-19 Cases*, Federal Bureau of Prisons (last updated Feb. 9, 2021), https://perma.cc/WXA9-73W9.

On May 20, 2020, Petitioner sought release from the Bureau of Prisons due to concerns regarding the COVID-19 pandemic, his medical history, and current health. His request was denied on June 10, 2020 and he filed the present motion shortly thereafter. He was appointed an attorney who filed six additional briefs on his behalf.

In his motion and supplemental briefs, Petitioner details his multiple serious health concerns including heart failure, type 2 diabetes, severe obesity (BMI of 42.4), essential hypertension, partial paralysis caused by Brown-Sequard syndrome (a neurologic condition), and acute kidney injury. (ECF No. 44, 51.) He also provides evidence he had undergone emergency heart surgery on September 2, 2020 when it was found he had two aortic aneurysms. According to the doctor who provided medical care to Petitioner following his surgery, Petitioner is "critically ill" and his "condition(s) . . . have a high

3

probability of sudden, clinically significant or life-threatening deterioration and require a high degree of attending physician attention." (ECF No. 45 at PageID 1047, filed under seal.) Since returning to prison after surgery, Petitioner has continued to have difficulty and has been taken to the hospital at least one additional time. On October 24, 2020, Doctors inserted a chest tube to improve his breathing and recommended additional cardiac surgery within two to four weeks. That surgery did not happen because the Bureau of Prisons is again on lockdown. (ECF No. 51.)

**II.    Analysis**

The "compassionate release" provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons there are "extraordinary and compelling" reasons to do so. *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Historically, only the Director of the Bureau of Prisons could bring such a motion, but this changed with the passage of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020). An inmate may now bring a compassionate release motion on his own behalf once he exhausts any administrative remedies or 30 days after requesting relief from the Bureau of Prisons. *Id.* at 1004 (citing *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020)).

The Sixth Circuit has instructed district courts to engage in the following three-step analysis when considering a compassionate-release motion: *First*, consider whether "extraordinary and compelling reasons warrant [a sentence] reduction." *United States v. Elias*, 984 F.3d 516, 518 (quoting 18 U.S.C. § 3582(c)(1)(A)). *Second*, "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing

4

Commission." *Id. Third*, "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id.* "If each of those requirements are met, the district court may reduce the term of imprisonment, but need not do so." *Id.* (quotations and citation omitted).

The policy statement referenced in step two is found in U.S.S.G. § 1B1.13 and presently only applies to motions brought by the Bureau of Prisons, not to inmate-filed motions. *Elias*, 984 F.3d at 519. Thus, when considering inmate-filed motions for compassionate release, "district courts have full discretion" to determine what reasons are "extraordinary and compelling." *Jones*, 980 F.3d at 1111. Here, Petitioner moves the Court to release him from prison due to his concerns regarding the COVID-19 pandemic, his medical history, and his current health conditions.

### A. Exhaustion of Administrative Remedies

The Government does not dispute that Petitioner exhausted his administrative remedies so that threshold requirement for relief has been satisfied.

### B. Extraordinary and Compelling Reasons

In its first response, the Government agreed that COVID-19 poses a significant risk to someone with Petitioner's health conditions therefore conceding that Petitioner satisfied this threshold for compassionate release. (ECF No. 38 at 16-17.) That conclusion seemingly changed by the time the Government filed its response to Petitioner's third supplemental brief. There, the Government contends the COVID-19 pandemic does not, by itself, qualify Petitioner for compassionate release and Petitioner does not present extraordinary and compelling reasons that would otherwise allow his motion to be granted. (ECF No. 46 at 4.) In support of its argument, the Government states Petitioner "is being regularly monitored and hospitalized when needed. His medical

5

conditions are not so exceptional or compelling . . . [he] has not contracted the Covid virus while imprisoned . . . [and] his concerns about greater consequences based upon his heart condition or other medical conditions are speculative." (*Id.* at 6.) Additionally, the Government notes that, at the time of its first response, only one staff member at FCI Hazelton had tested positive for COVID-19 and one staff member had recovered. No inmates had tested positive and there were no reported deaths in the facility. (ECF No. 38 at 8.)

The Court agrees with the Government and the Sixth Circuit which recently confirmed that the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Elias*, 984 F.3d at 521 (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Nonetheless, courts frequently take the threat of infection by the novel coronavirus into account when determining the effect COVID-19 may have on a particular inmate given his or her individualized health concerns and co-morbidities. *See Jones*, 980 F.3d at 521; *United States v. John Bass*, No. 21-1094, Order at 2 (6th Cir. Feb. 5, 2021) ("A defendant whose medical conditions increase his risk of severe illness may be able to demonstrate extraordinary and compelling reasons supporting release."). And the Government has conceded at least once before that the combination of the COVID-19 pandemic and an underlying medical condition that places one at an increased risk of severe illness from the virus constitutes an "extraordinary and compelling" reason within the meaning of § 3582(c). United States' Response Opposing Def's Motion for Compassionate Release at 12-13, *United States v. Ford* (2020) (No. 00-80974) (ECF No. 112) (conceding that the

6

extraordinary and compelling threshold had been satisfied "[g]iven the heightened risk that Covid-19 poses to someone with diabetes," such as the petitioner).

Here, Petitioner clearly meets the threshold "extraordinary and compelling reasons" that warrant his release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Multiple of Petitioner's medical conditions, including heart failure, obesity, and type 2 diabetes, are identified by the Centers for Disease Control ("CDC") as those which place Petitioner at an increased risk of severe illness from the virus. *See People with Certain Medical Conditions,* Centers for Disease Control and Prevention (last updated Feb. 3, 2021), https://perma.cc/C3WQ-T56C; *see also Elias*, 984 F.3d at 521 ("Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions."). Moreover, Petitioner has multiple conditions that the CDC states "might" place him at an increased risk including hypertension and a neurologic condition. *Id.* Petitioner is "critically ill" according to his own doctor and would likely suffer dire consequences if infected with COVID-19. (*See* ECF No. 45 at PageID 1047, filed under seal.)

The Government argues the Bureau of Prisons' precautions have mitigated the risk from COVID-19 within its facilities by "modifying its operations to implement its Covid-19 Action Plan," maximizing physical distancing, screening staff and contractors for symptoms and establishing quarantine and isolation procedures, among other things. (ECF No. 38 at 7.) This has not been enough to stop the spread of the virus. Positive COVID-19 cases at FCI Hazelton have jumped from the time of the Government's first response to the time of this writing – there was only one positive case of COVID-19 among inmates and staff then, now there are six; there was only one recovery then, now there are 224. One inmate in Petitioner's facility has now died. *See COVID-19 Cases*, Federal

7

Bureau of Prisons, *supra*. The Government cannot ensure that Petitioner will continue to avoid a COVID-19 infection while he remains in the care of the Bureau of Prisons. Considering the severe effect the virus would likely have on Petitioner given his co-morbidities, the Court finds "extraordinary and compelling reasons" warrant Petitioner's early release.

### C. Section 3553(a) Sentencing Factors

The Court must also consider the sentencing factors under 18 U.S.C. § 3553(a) and determine whether such factors support or undermine the sentence reduction. *Elias*, 984 F.3d at 518. These factors include a petitioner's history and characteristics; the nature and circumstances of his offense; consideration of the seriousness of the offense; the need to promote respect for the law, provide just punishment, and afford adequate deterrence; the need to protect the public from further crimes by the petitioner; and consideration of his needs for care or treatment. *See* 18 U.S.C. § 3553(a).

Here, the Government argues Petitioner should not be granted compassionate release because he is a danger to the community and has a lengthy criminal history.[1] Further, the Government focuses on the time Petitioner has been imprisoned – he has only served about 40% of his sentence and has been disciplined twice during those approximately four and a half years. Finally, he has not earned his GED, enrolled in vocational training, or established financial savings. (ECF No. 46 at 6-7.)

---

[1] In addition to Petitioner's convictions, the Government points to his older arrests for crimes for which he was not convicted. This is improper. *See United States v. Johnson*, 648 F.3d 273, 277-78 (5th Cir. 2011) ("[A]n arrest, without more, is quite consistent with innocence . . .")(internal quotation marks omitted); *Coffin v. United States*, 156 U.S. 394, 403 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.")

Nevertheless, the § 3553(a) factors weigh in favor of Petitioner's release. Petitioner's crimes were serious, he does not dispute that fact, but they were also non-violent. (ECF No. 42 at 2-3.) His criminal history is lengthy and involves multiple convictions for dealing harmful drugs, but he was never involved in a large or multi-state drug conspiracy. Rather, his record is comprised of convictions for a series of small drug transactions that he states allowed him to feed his own drug addiction. (ECF No. 24 at 10.) Petitioner was introduced to drugs as a child, but he states he now takes responsibility for his actions and understands he needs to be held accountable in order to grow and change. (ECF No. 42-1). The Court therefore concludes the nature and circumstances of Petitioner's offense, in light of his entire history and characteristics, weigh in favor of compassionate release.

The Court also finds that compassionate release in this case is consistent with promoting respect for the law, providing just punishment, and affording adequate deterrence. District courts are permitted "to consider the amount of time that a defendant has served on a sentence when deciding whether to grant a sentence reduction." *Ruffin*, 978 F.3d at 1008. Here, Petitioner has served over four years of a twelve-year sentence, but the conditions of his imprisonment and his unique circumstances must also be considered. Petitioner is isolated indoors in his cell nearly all the time. (ECF No. 40 at 16.) Family and friends are prohibited from visiting. Programming, absent select operations, has ceased and movement throughout the prison is suspended. (*Id.*) The Court has already established, above, that Petitioner's health conditions pose a strong risk of severe illness or death from COVID-19 should he become infected. And, although prison lockdowns and other measures have been instituted by the BOP to slow or stop the

spread of the virus, the reality of a prison setting presents significant obstacles to the practice of health measures such as social distancing and maintaining proper hygiene. For these reasons, the Court finds the aforementioned factors weigh in favor of compassionate release.

Petitioner's two disciplinary infractions do not change this analysis. His record shows he was cited in 2017 for refusing to obey an order after he stated he needed a handicap cell and "did not want to go back." (ECF No. 40 at 21.) Given his mobility impairment, this disregard for authority can be forgiven for purposes of this motion. In June of 2019, he was given another citation, this time for possession of a controlled substance. While this is a more serious offense, Petitioner has taken responsibility for his actions and has not repeated that conduct. He has also completed the Drug Abuse Education program since that time and was due to begin a non-residential drug abuse program before the pandemic-related lockdown was instituted. (*Id.* at 22.)

Finally, the Court finds early release presents little risk to the community. Petitioner's underlying offense conduct was non-violent. Additionally, his worsening medical conditions have rendered him substantially wheelchair bound. (*Id.* at 20.) And, despite the Bureau of Prisons' determination that Petitioner is a medium risk recidivism level, his security designation has recently been changed from medium to low. (ECF No. 49 at 5.) Accordingly, the Court finds that the balance of the 18 U.S.C. § 3553 factors do not preclude Petitioner's requested relief.

### III.   Conclusion

The Government does not dispute that Petitioner has exhausted his administrative remedies. He also has established "extraordinary and compelling" reasons for

Case 2:16-cr-20291-NGE-EAS ECF No. 55, PageID.1513 Filed 02/11/21 Page 11 of 12

compassionate release within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i). An analysis of the 18 U.S.C. § 3553 factors also indicates early release is permissible. Petitioner has been granted many second chances throughout his life but has failed time and again to make use of them. Regardless, he did not commit a capital offense and is deserving of an opportunity to change his life and tend to his medical concerns during this pandemic. For these reasons, Petitioner's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED.

Accordingly,

IT IS ORDERED that Petitioner's Motion for Compassionate Release (ECF No. 32, 39) is GRANTED;

IT IS FURTHER ORDERED that Petitioner's sentence of imprisonment is reduced to time served;

IT IS FURTHER ORDERED that, immediately upon release, Petitioner shall commence a new term of supervised release of 36 months;

IT IS FURTHER ORDERED that, unless Petitioner has been in a segregated special unit for high-risk prisoners for more than 14 days where no inmate has tested positive or shown symptoms of COVID-19 within the past 14 days, he shall self-quarantine within his home for the first 14 days immediately following his release;

IT IS FURTHER ORDERED that Petitioner shall serve the first 12 months of supervised release under home detention and shall not leave his residence other than for medical appointments or other specific reasons detailed in the forthcoming amended judgement;

11

IT IS FURTHER ORDERED that Petitioner's final 24 months of supervised release shall be served according to the conditions imposed by the Court in its original judgment with additional terms to be considered in the Court's discretion and in consultation with the Probation Department;

Petitioner's original sentence remains unchanged in all other respects.

SO ORDERED.

      s/ Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Court Judge

Dated: February 11, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 11, 2021, by electronic and/or ordinary mail.

      s/
      Case Manager